Gary BROOKS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2001–SC–0458–MR.

Supreme Court of Kentucky.

Sept. 18, 2003.

Richard Hoffman, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General, Samuel J. Floyd, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice WINTERSHEIMER.

This appeal is from a judgment based on a jury verdict which convicted Brooks of criminal attempt to commit murder, first-degree robbery and two counts of second-degree unlawful transaction with a minor. He was found to be a second-degree persistent felony offender and his sentence was enhanced to a total of 70 years in prison.

The questions presented are whether the trial judge correctly permitted video-taped testimony from an incarcerated witness; whether the audiotape of the statement made by the witness to police was admissible; whether the closing argument by the prosecutor was improper; whether the victim suffered serious physical injury and whether the trial judge allowed too much of a description of the prior misdemeanor convictions of Brooks into the sentencing portion of the trial.

The evidence at trial indicated that Brooks, acting in complicity with others, including Wood and her minor son, robbed a cab driver. Brooks used a knife to cut the throat of the cab driver, and during the struggle that followed, he also slashed and stabbed the cab driver in the face and on his hands and arms. Subsequently, an informant contacted the police and told them that he had been present when Brooks planned the crime and that Brooks showed him a sum of money and told him that he and the others committed the robbery. This informant then assisted the police by wearing a wire and obtained incriminating statements from Wood and her minor son. The cab driver/victim positively identified Brooks at trial.

Brooks testified in his own defense and denied planning or committing the robbery. He testified that the other individuals, including the informant, had committed the robbery and that Wood framed him because he refused to marry her on several occasions. He also denied telling the informant that he committed the robbery or driving him to the scene of the occurrence. After two mistrials, Brooks was convicted of attempted murder, first-degree robbery and two counts of unlawful transaction with a minor. As a second-degree persistent felony offender, he was sentenced to a total of 70 years in prison. This appeal followed.

## I.  Prior Videotaped Testimony

Brooks argues that the trial judge erred to his substantial prejudice and denied him the right to confront witnesses against him when he declared that an incarcerated witness who had recently attempted suicide was unavailable and permitted the prior videotaped testimony of that witness to be shown to the jury in lieu of her live testimony. We disagree.

At a pretrial hearing the day before the scheduled trial, the prosecutor advised the trial judge that Mary Wood, an incarcerated witness, had attempted suicide and would not be available to testify at trial. The Commonwealth filed a motion in limine to be allowed to play the videotape of Wood's testimony from an earlier trial of Brooks in lieu of her being present at the third trial in person. The Commonwealth was allowed to play the videotape of the testimony from the September 20, 2000 trial which had ended in a mistrial. At the earlier trial, Wood was called by the prosecution and recalled by the defense. The earlier trial involved the same defendant and the same offense on the same charges. The Commonwealth relied on RCr 7.20 and RCr 7.22 which permit the use of previous trial testimony where a witness is unavailable. Defense counsel objected claiming that the evidence did not comport with the hearsay exception under KRE 804(b)(1) and that the defense did not believe Mary Wood was legally unavailable. He claimed that the unavailability was due to the inaction of the Commonwealth in not preventing the suicide attempt. The trial judge rejected the defense arguments and found that the witness was unavailable and that such unavailability was not caused by the Commonwealth.

Brooks also objected to the finding as to unavailability asserting that the Commonwealth had presented no physical evidence with regard to her illness. The Commonwealth then presented a sworn affidavit from the prosecutor about the information he had obtained noting that the affidavit also contained the telephone numbers of persons he had spoken to at the Kentucky Correctional Institute for Women. The defense countered that it did not believe the affidavit was sufficient and the trial judge asked if defense counsel would like, on the record, to telephone either or both of the prison officials listed in the affidavit to determine if the facts asserted were correct. Defense counsel declined to do so. After further discussion, the trial judge himself telephoned the prison during the in-chambers hearing in order to corroborate the affidavit and to ascertain the apparent condition of the witness. Neither party objected to the trial judge speaking to the representatives at the prison. The trial judge spoke to an officer at the prison who verified the circumstances that the prosecutor had reported. The officer also stated that although they could transport Wood and would follow any order of the court in that regard, it would be against medical advice and that the prison did not want the potential liability in the event that anything happened to Wood.

Following this conversation, the trial judge found that based on the affidavit of the prosecutor and his personal contact with the correctional facility personnel that the witness was unavailable for trial. Defense counsel told the court that he might, after consulting with Brooks, seek a continuance.

The following morning, the trial judge conducted another in-chambers meeting, this time with Brooks present, and ruled that he would allow the playing of the prior testimony. The trial judge also inquired directly of Brooks if he wanted a continuance in the light of his ruling. Brooks stated that he did not. There was no formal motion made for a speedy trial. Consequently, this issue was waived.

▇▇▇ The trial judge properly exercised his sound discretion in determining that Mary Wood was unavailable to attend or testify because of sickness or infirmity pursuant to RCr 7.20(1). Such a decision is within the sound discretion of the trial judge. See *Lovett v. Commonwealth*, Ky., 103 S.W.3d 72 (2003); see also *Ruppee v. Commonwealth*, Ky., 821 S.W.2d 484

(1992), *citing Carter v. Commonwealth,* Ky., 782 S.W.2d 597 (1990). Such a determination will not be reviewed unless the decision of the trial judge is clearly unreasonable. *Ruppee, supra.* A careful review of the record here shows that the decision of the trial judge was not clearly unreasonable. The trial judge correctly concluded that there had been a sufficient showing as to the unavailability of Wood because of health concerns. *See Bruce v. Commonwealth,* Ky., 441 S.W.2d 435 (1969).

■ Any concerns for the confrontation clause lack merit. There is an exception to a defendant's constitutional right to be confronted with the witnesses against him where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). *Barber, supra,* is otherwise factually distinguishable. That case involved a witness who was located in a federal prison in another state. The court held that the mere absence of a witness is not sufficient grounds for dispensing with the constitutional right of confrontation, particularly in view of the increased cooperation between states and between states and the federal government with respect to processes for obtaining the presence of witnesses from outside the jurisdiction.

Here, the witness' presence was compromised by her medical health. *Commonwealth v. Howard,* Ky.App., 665 S.W.2d 320 (1984), stated that if the prior testimony is found by the trial court to be reliable and trustworthy, and the witness was subject to cross-examination, it makes no difference whether the prior testimony comes by way of deposition, previous trial, preliminary hearing, or as in the *Howard* case, a bond reduction hearing, provided the same offense and same charge are dealt with. *See also Wells v. Commonwealth,* Ky., 562 S.W.2d 622 (1978) *cert. denied* 439 U.S. 861, 99 S.Ct.181, 58 L.Ed.2d 170; *Cf. Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The case of *Stoner v. Sowders,* 997 F.2d 209 (6th Cir.1993), is factually different because in that case the Commonwealth failed to show why two witnesses were unavailable to give the same testimony in court when the depositions had been taken the day before trial. No such factual pattern occurred in this case. The trial judge was correct.

## II. Audiotape Admissible

■ Brooks contends that the trial judge erred to his substantial prejudice and denied him his Sixth Amendment right to confront witnesses against him when the trial judge permitted the unredacted recorded statement of Mary Wood made to the police to be played for the jury even though she was not present at this trial. We disagree.

This assignment of error is related to the first issue involving the prior testimony of Wood. At the pretrial hearing the day before the trial, the trial judge considered the issue of the admissibility of the prior testimony of Wood. One of the objections raised by defense counsel was that he, unlike his predecessor in the previous trial, did not intend to cross-examine Wood by introducing her taped statement to the police. Brooks notes that defense counsel claimed that this decision was an exception to the exception under KRE 804(b)(1) because, under his analysis, the rule referred not only to there having been an opportunity to cross-examine the witness during former testimony, but also a similar motive with regard thereto.

The trial judge heard additional arguments on this question the morning of

trial. He overruled the objections to the admissibility of the taped statement made to police. Such ruling was not erroneous.

Defense counsel introduced the taped statement of Wood at the second trial for the purpose of impeachment. As we previously determined in this opinion, Brooks waived the issue concerning the availability of Wood at the third trial and the trial judge correctly admitted her earlier testimony as the equivalent of a deposition. *See* RCr 7.20 and RCr 7.22. The former testimony was subject to all the proper exceptions and objections which could have been advanced to exclude the testimony of the witness when it was first given. *See* RCr 7.20(2). This is the general rule followed in most jurisdictions. *See* John E. Theuman, Annotation, *Former Testimony Used at Subsequent Trial as Subject to Ordinary Objections and Exceptions*, 40 A.L.R.4th 514 (1985).

Some jurisdictions, however, have carved out an exception to the general rule based on the concept of waiver. *See* Theuman, *supra, citing e.g., Scribner v. Palmer*, 90 Wash. 595, 156 P. 531 (1916) which upheld the denial of the defendant's objections as to the competency of certain former testimony by a deceased plaintiff because the defendant himself elicited that testimony in cross-examination at the former trial. We agree with those jurisdictions and find that waiver occurred here when defense counsel introduced the taped statement at the second trial. The purported change in trial strategy was not sufficient grounds to sustain the objection. Nor does KRE 804(b)(1) require the exclusion of otherwise admissible prior testimony because of changes in, or second thoughts about, trial strategy. The trial judge correctly admitted the prior testimony of Wood including her taped statement to police. There was no Sixth Amendment violation.

## III. Prosecutorial Misconduct

█ The trial judge properly overruled the defense objection to the closing argument of the prosecutor. Brooks complains that reversal is required because the remarks of the prosecutor supposedly shifted the burden of proof to the defendant when he argued that there were non-family member witnesses the defense could have called but failed to do so. We find no foundation for such a claim.

The record indicates that all of the defense witnesses except a police detective were relatives of Brooks and that this matter was first brought up by defense counsel in his closing argument. During trial, the defendant testified that because he supposedly traveled on the job, he had very few friends other than family members. The remarks of the prosecutor in closing argument did not produce error. As recently noted in *Maxie v. Commonwealth*, Ky., 82 S.W.3d 860 (2002), prosecutors are allowed wide latitude during closing arguments and may comment upon the evidence presented. By comparison, the comments of the prosecutor in this instance were not improper and the ruling of the trial judge was correct. There was no constitutional violation.

## IV. Serious Physical Injury

█ The trial judge did not deny Brooks his right to due process when he made a determination that the defendant was a violent offender and that the victim suffered serious physical injury. The trial judge determined for the purposes of the violent offender parole ineligibility provisions of KRS 439.3401 that the injuries inflicted by Brooks on the victim were serious physical injuries. This followed the jury verdict finding Brooks guilty of the charged offenses.

Brooks now claims that this ruling was in error because "the jury specifically rejected a finding of serious physical injury" and because there was "no record evidence that the victim suffered a serious physical injury." It should be understood that the statute which was amended in 1998 requires a violent offender to serve at least 85% of a sentence before becoming eligible for parole. *See Myers v. Commonwealth* Ky., 42 S.W.3d 594 (2001). Serious physical injury is defined in KRS 500.080(15) as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ."

Here, there was sufficient evidence to show that the defendant inflicted wounds on the neck which subjected the victim to substantial risk of death and caused serious and prolonged disfigurement. The most immediate risk was occasioned by the victim's loss of blood. Hospital records demonstrate that when emergency technicians reached the victim on the highway, a large amount of blood was in his lap. Emergency room records confirm that following treatment, the patient was to continue to have close observation.

During the criminal incident, the victim had been ordered to travel miles out into the county to a remote location where he was attacked. There were two long crossing slashes on the neck of the victim and he had stab wounds at the right side of his face and neck and multiple defensive wounds on both upper extremities. The fact that the victim was found before he bled to death does not change the life threatening nature of his injuries. Although medical testimony may be the preferred method of proving the serious physical injury requirement, lay testimony may be considered. *Johnson v. Common-*

*wealth,* Ky.App., 926 S.W.2d 463 (1996). The medical and nonmedical evidence in this case support the decision by the trial judge that the victim suffered serious injuries at the hands of the defendant. Thus, he was properly a subject for the violent offender parole limitation provided in KRS 439.3401.

Here, the jury correctly found from the evidence that Brooks attempted to kill the victim but that does not mean that the jury thereby rejected a finding of serious physical injury. The jury was instructed on first-degree assault as a lesser-included offense of criminal attempt to commit murder—even though both offenses are Class B felonies. Having found Brooks guilty of the greater offense, the jury did not need to reach the lesser offense. It should be noted that there was no defense objection to the first-degree assault instruction on the basis of any lack of serious physical injury evidence. The ruling by the trial judge was appropriate. There was no constitutional violation of any nature.

## V. Prior Misdemeanor Convictions

Brooks argues that the trial judge committed error when he allowed the Commonwealth to enter far too much description of prior misdemeanor convictions into evidence during the sentencing phase of the trial. We disagree.

During the sentencing phase, the Commonwealth presented a probation and parole officer to testify about a prior felony conviction of Brooks for first-degree assault under extreme emotional disturbance with a sentence of one year in the penitentiary. Thereafter, the Commonwealth introduced certified records pertaining to the misdemeanor convictions over defense objections.

KRS 532.055(2)(a)(2) permits the introduction of the nature of prior offenses for

which a defendant was convicted. Here, the Commonwealth introduced a criminal complaint associated with prior convictions for unlawful transaction with a minor, terroristic threatening and theft by unlawful taking under $300. Brooks complains that the information contained in the criminal complaint far exceeds the amount of information a jury is allowed to hear for the purpose of imposing a sentence. He relies on *Robinson v. Commonwealth*, Ky., 926 S.W.2d 853 (1996). This Court stated in that case that all that is admissible as to the nature of a prior conviction is a general description of the crime. This Court went on to say that it would be sufficient to introduce the judgment with testimony that the defendant assaulted the woman with whom he had been living.

A careful examination of the record shows that there was no objection to this evidence on the grounds that it was more than permitted by the statute, and therefore prejudiced the defendant. The defense counsel did interpose a general objection to any misdemeanor record of Gary Brooks. Earlier at a bench conference, the defense counsel stated that he would object to the misdemeanor convictions, although he knew the felony convictions were admissible.

As a general rule, a party must make a proper objection to the trial court and request a ruling on that objection or the issue is waived. *Commonwealth v. Pace*, Ky., 82 S.W.3d 894 (2002); *accord Bell v. Commonwealth*, Ky., 473 S.W.2d 820 (1971). Here, Brooks waived the issue because his stated objection at trial was not at all of the nature which he now raises on appeal. There was no federal or state constitutional violation.

There was no error of any kind in reaching the decision promulgated by the trial judge. The elements enumerated in the rule have been recognized as being illustrative, rather than exhaustive. *See Commonwealth v. Higgs*, Ky., 59 S.W.3d 886 (2001), *citing Cornelison v. Commonwealth*, Ky., 990 S.W.2d 609 (1999). It has been recognized as a policy to provide full and accurate information to a sentencing jury. *Cornelison, supra. See also Huff v. Commonwealth*, Ky., 763 S.W.2d 106 (1988).

Here, the information provided regarding misdemeanor convictions of Brooks was directly relevant to the crimes for which the jury had just found him guilty. The criminal complaint on the third-degree unlawful transaction with a minor showed that Brooks previously had engaged in the sort of coercive conduct which he used to induce the two minors into the robbery of the cab driver. The criminal complaint regarding terroristic threatening indicated that the defendant was prone to the sort of violent conduct inflicted on the victim here. Finally, the criminal complaint on the charge unlawful taking under $300 demonstrated an inclination to commit theft crimes motivated by relatively small amounts of cash such as that which he took from the victim in this case. *Robinson, supra*, is factually distinguishable because the complained of penalty evidence there consisted of testimony by a victim of a prior assault who was allowed to testify at length. No such detailed testimony was permitted here. The penalty phase misdemeanor evidence was not clearly beyond the limitation set for such evidence by *Robinson. See also Hudson v. Commonwealth*, Ky., 979 S.W.2d 106 (1998). The information provided here was relevant to arriving at an appropriate sentence for this particular offender. *See Williams v. Commonwealth*, Ky., 810 S.W.2d 511 (1991).

The judgment of conviction and sentence is affirmed.

LAMBERT, C.J., and GRAVES, J., concur. COOPER and JOHNSTONE, JJ., concur but as to result only on issue I. KELLER, J., dissents by separate opinion and is joined by STUMBO, J., who also dissents by separate opinion.

KELLER, Justice, dissenting.

Because substantial evidence supports, the trial court's determination that Mary Wood ("Wood") was unavailable to testify at Appellant's third trial, I agree with the majority's conclusion that the trial court properly allowed the Commonwealth to introduce Wood's videotaped prior sworn trial testimony. I respectfully dissent from the result reached by the majority and vote to reverse Appellant's convictions and to remand the case for a new trial, however, because the trial court erred when it permitted the introduction of Wood's audiotaped, unsworn, out-of-court interview with investigating officers as part and parcel of her prior trial testimony. In my view, the *evidentiary* issues in this case can—and should—be resolved under the Kentucky Rules of Evidence. Because the trial court's finding that Wood was unavailable was not clearly erroneous, Wood's prior trial testimony was properly admitted under KRE 804(b)(1). The lion's share of Wood's out-of-court confession, however, constituted rank hearsay that does not fall within an exception to the hearsay rule and thus should have been excluded.[1]

To properly contextualize the error in this case, I find it necessary to give a more extensive recitation of the factual background of this case—focusing upon the nature of Appellant's defense and Appellant's cross-examination of Wood, including the manner in which Wood's out-of-court confession was introduced—than the majority provides. Thus, briefly: (1) an assailant, acting in complicity with others, robbed a cab driver in rural Henderson County, Kentucky, and, during a struggle, used a knife to slash and stab the driver's face, hands, and arms; (2) subsequently, Kenneth "Cowboy" McClanahan contacted the authorities and informed them that he had been present when Appellant planned the crime, and that Appellant had later shown him a sum of money and told him that he (Appellant), Appellant's girlfriend Wood, Wood's minor son B.W., and B.W.'s friend C.P. had committed the crime together; (3) McClanahan then assisted the investigating officers by wearing a wire and obtaining taped incriminating statements from Wood (the initial getaway driver) and B.W. (who assisted the assailant during the robbery by taking the driver's money bag and wallet to his mother's vehicle); (4) Appellant, Wood, B.W., and C.P. were all charged; (5) B.W.'s and C.P.'s charges were disposed of in juvenile court and Wood entered a guilty plea in circuit court and received a prison sentence; (6) Appellant proceeded to trial, and his theory of the case was that *McClanahan,* Wood, B.W., and C.P., had committed the robbery, and that Wood had "cooked up" the scheme to finger Appellant as the assailant as retribution for Appellant's refusal to become her fourth husband. Prior to the trial that is the subject of the present appeal to this Court, two (2) separate juries were unable to reach a unanimous verdict as to Appellant's guilt.

During the Commonwealth's direct examination of Wood at Appellant's second trial, Wood described the planning, preparation, and execution of the robbery. Defense counsel's cross-examination consisted primarily of laying KRE 613 foundations

---

**1.** KRE 802 ("Hearsay is not admissible except as provided by these rules or by rules of the Supreme Court of Kentucky.").

to impeach Wood with alleged inconsistencies between her trial testimony and a previous statement that Wood had given to police officers upon her arrest ten (10) days after the crime. Specifically, defense counsel addressed inconsistencies including: (1) whether Appellant, while leaping into Wood's car after robbing the cab driver and slicing the driver's throat, exclaimed "Drive, bitch, drive!" (as Wood testified at trial) or "go, go, go" (as Wood had stated in her audiotaped statement to the police); (2) whether during her trial testimony, in which she described the knife that Appellant allegedly used and explained that Appellant shaved his beard immediately after the crime for the purpose of changing his appearance, Wood disclosed new details regarding the crime "for the first time"; and (3) whether, in contrast to her earlier statement to the police in which she described "getting caught up in the 'hype' of it," Wood's trial testimony attempted to emphasize that her own role in the crime and the role of her son was the result of Appellant's coercion. In response to many of these KRE 613 foundational questions, Wood stated that she could not remember the exact words that she had used during her statement to police two (2) years earlier. After a handful of Wood's "I can't remember what I said back then" responses, defense counsel stated/inquired "Why don't we just play the tape?" After a lengthy bench conference, that is exactly what transpired.

Wood remained seated on the witness stand while Appellant's trial counsel played for the jury Wood's approximately-fifteen-minute-long audiotaped interview with the investigating officers. During the interview, Wood indicated that she was "cooperating" with the authorities, started her narrative of the events by stating that "Gary wanted to go do a job," and proceeded to describe Appellant's role in soliciting, planning, and executing the robbery. When the tape concluded, defense counsel engaged in a few follow-up questions to establish the alleged inconsistencies—e.g., "Now you heard yourself tell the officer that Gary said 'go, go, go' right?"—and then he concluded his cross-examination. The Commonwealth had no redirect examination. However, defense counsel later recalled Wood to the stand to lay additional groundwork for Appellant's "you lied on me because I wouldn't take you as my bride" defense—i.e., more KRE 613 foundational questions regarding whether she had asked Appellant to marry her in the presence of other people and whether, when she discovered that Appellant was already married to someone else, she made statements to the effect of "paybacks are hell" and "he'll pay." The case was subsequently submitted to the jury for its deliberations, and the trial court declared a mistrial when the jury was unable to reach a unanimous verdict.

After the trial court ruled prior to Appellant's third trial that the Commonwealth could introduce Wood's videotaped trial testimony from the second trial, Appellant's new defense counsel requested that the trial court redact the videotape to omit the portion where Appellant's former trial counsel had played Wood's audiotaped out-of-court statement to police. The trial court denied Appellant's motion. And, thus, at Appellant's third trial, after all of the Commonwealth's "live and in person" witnesses testified: (1) the bailiff rolled a TV/VCR "media cart" in front of the jury; (2) the trial court informed the jury that Wood was unavailable to testify in person at the trial, but admonished the jury to give Wood's testimony from a prior "hearing" as much credibility as it would if Wood had testified in person because Wood had been under oath at the time she testified at the prior "hearing"; and (3) both Wood's trial testimony and her out-

of-court audiotaped statement to police were played for the jury (with the trial court's bench clerk muting and fast-forwarding through the bench conferences).

The trial court erred when it denied Appellant's motion to redact Wood's out-of-court confession from the videotape that contained Wood's former trial testimony. Despite the majority's suggestion to the contrary,[2] Wood's out-of-court confession, although played *during* her earlier testimony, was not, itself, testimony,[3] and was certainly not, therefore, "testimony given as a witness at another hearing of the same or a different proceeding"[4] that would be admissible under KRE 804(b)(1). Instead, Wood's interview contained extrajudicial statements[5] that could be admitted into evidence at Appellant's trial only if they independently satisfied an exception to the hearsay rule.[6] Although a handful of individual statements contained within Wood's interview would have been admissible under KRE 801A(a)(1) as prior statements that were inconsistent with Wood's trial testimony, and certain inculpatory statements may have been admissible under KRE 804(b)(3) as statements against Wood's interest, much of Wood's "confes-

sion" consisted of descriptions of Appellant's conduct rather than her own. Simply stated, neither KRE 804(b)(3) nor any other rule permitted the introduction of Wood's extrajudicial statements about *Appellant's* conduct.[7]

The majority, however, does not address the substantive issue of whether Wood's extrajudicial "confession" was, in fact, properly admissible at Appellant's trial. Instead, the majority holds that Appellant waived his right to object to the playing of the audiotape because Appellant's former trial counsel had introduced the audiotape of Wood's police interview during his cross-examination at the prior trial. In so doing, the majority adopts what it acknowledges to be a minority position, which could be characterized as "you made your bed, now you get to sleep in it," in apparent reliance upon pre-WWI authority, which has not been cited by any court since before WWII, that only holds, on a matter of statutory interpretation, that a statute did not permit objections to portions of former testimony.[8] Most significantly, however, the majority opinion's waiver analysis all but ignores *our own rules* addressing objections to former testi-

---

**2.** *Brooks v. Commonwealth,* Ky., 114 S.W.3d 818, 829 (2003) ("Nor does KRE 804(b)(1) require the exclusion of otherwise admissible *prior testimony* because of changes in, or second thoughts about, trial strategy. The trial judge correctly admitted the prior testimony of Wood *including her taped statement to police.*" (emphasis added)).

**3.** *See* BLACK'S LAW DICTIONARY 1485 (7th ed.1999) (defining "testimony" as "[e]vidence that a competent witness *under oath* gives *at trial or in an affidavit or deposition.*" (emphasis added)).

**4.** KRE 804(b)(1).

**5.** *See* KRE 801(a) ("A 'statement' is ... an oral or written assertion[.]"). *Cf. Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431,

129 L.Ed.2d 476 (1994) (holding that "statement," under FRE 804(b)(3) means "a single declaration or remark" rather than "a report or narrative").

**6.** *See* KRE 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.")

**7.** *See Osborne v. Commonwealth,* Ky., 43 S.W.3d 234, 239–241 (2001).

**8.** *Scribner v. Palmer,* 90 Wash. 595, 156 P. 531, 532 (1916) ("It is the testimony of the deceased witness given in a former trial, not some part of it, which is in plain and positive terms made admissible at the second trial. The statute leaves no room for construction.").

mony. The Kentucky Rules of Criminal Procedure: (1) treat a witness's testimony at a former trial as the equivalent of a deposition;[9] (2) make the admissibility of a witness's former testimony subject to the Kentucky Rules of Evidence;[10] and (3) explicitly authorize objections at trial to portions of deposition testimony and set out the circumstances under which such objections may have been waived:

> Objections may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason that would require exclusion of the evidence if the witness were then present and testifying; provided, however, that:
>
> (a) objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition unless the ground of the objection is one that might have been obviated or removed if presented at that time;
>
> (b) errors and irregularities occurring in the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation or in the conduct of the parties, and errors of any kind that might be obviated, removed, or cured if promptly presented are waived unless seasonable objection is made at the taking of the deposition; and
>
> (c) objections to the form of written questions are waived unless served in writing on the party propounding them within the time allowed for serving the succeeding cross or other questions and within three (3) days after service of the last questions authorized.[11]

Today's majority opinion adopts, by judicial fiat, a new fourth exception to RCr 7.20(2)'s general rule that former testimony is subject to all proper objections that could have been raised at the time the testimony was originally given. If the Court wishes to amend its rules, we have procedures to do so. As we have not done so, however, I would apply RCr 7.20(2) as written. I therefore disagree with the majority's apparently ad hoc conclusion that Appellant waived his right to object to this inadmissible hearsay, and I would hold that the trial court erred when it failed to redact Wood's videotaped prior testimony as Appellant had requested. Because the erroneous admission of the audiotaped confession prejudiced Appellant by improperly bolstering Wood's sworn testimony, I vote to reverse Appellant's convictions and to remand this indictment to the trial court for a new trial.

STUMBO, J., joins this dissenting opinion.

STUMBO, Justice, dissenting.

Respectfully, I must dissent from the majority's holding that the trial court did not err in admitting the unredacted recorded testimony of Mary Wood.

The Confrontation Clause of the Sixth Amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment, guarantees

---

**9.** RCr 7.22 ("For purposes of Rule 7.20 a duly authenticated transcript of testimony given by a witness in a previous trial of the same offense in any district or circuit court on the same charge shall be the equivalent of a deposition.").

**10.** RCr 7.20(1) ("At the trial or upon any hearing, a part or all of a deposition, *so far as otherwise admissible under the rules of evidence,* may be used ...." (emphasis added)).

**11.** RCr 7.20(2).

that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with witnesses against him." To overcome this guarantee there must be a viable exception. *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

In this case, the Commonwealth presented an affidavit and the trial judge made a personal inquiry as to Ms. Wood's unavailability. Satisfied that Ms. Wood was indeed unavailable, the trial judge permitted admission of Ms. Wood's prior testimony via videotape.

If the only issue was whether Ms. Wood was successfully characterized as an unavailable witness, Appellant's argument would fail. The trial judge was satisfied that the Commonwealth adequately demonstrated Ms. Wood's unavailability, thus meeting the rule of necessity required by the Confrontation Clause. *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

However, the issue in this case is whether it was error to include *all* prior testimony given by Ms. Wood. The second prong of the Confrontation Clause test requires that before admission of testimony from an unavailable witness there must be an "indicia of reliability." *Roberts, supra,* at 66, 100 S.Ct. 2531. Defense counsel objected to the inclusion of that portion of Ms. Wood's prior testimony containing her confession that was obtained during "custodial interrogation."

Traditionally, statements obtained through the use of leading questions regarding a serious crime and the role of a party in that crime have been viewed by the courts as unreliable. *Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). A review of the totality of the circumstances surrounding Ms. Wood's confession, including: the immanency of the charges; her co-defendant status; the participants' tendency to shift blame; and the omission of the procedural safeguards of oath and limited or· restricted cross-examination, all create doubt as to any "particularized guarantees of trustworthiness." *Roberts, supra,* at 66, 100 S.Ct. 2531.

Ms. Wood's unavailability denied Appellant the opportunity to confront his accuser at his third trial. The trial court believed there was sufficient evidence to overcome the denial of Appellant's Sixth Amendment guarantee. I disagree. Ms. Wood's confession did not bear any "indicia of reliability" or "particularized guarantees of trustworthiness" and thus was inadmissible.

Defense counsel requested that the confession be redacted from the testimony of the second trial prior to being presented to the jury at Appellant's third trial. The trial judge's decision to allow the unredacted testimony containing Ms. Wood's custodial confession denied Appellant his Sixth Amendment right to confront his accuser and therefore, was reversible error.