**Carrie GENTRY Petitioner**

**v.**

**Doris DEUTH, Warden, Kentucky Correctional Institute for Women Respondent**

**No. 5:03CV–P15–J.**

United States District Court, W.D. Kentucky, At Paducah.

May 21, 2004.

Timothy G. Arnold, Department of Public Advocacy, Frankfort, KY, for Plaintiff.

William Larue Daniel, II, Attorney General, William Robert Long, Jr., Attorney General, Frankfort, KY, for Defendant.

## *MEMORANDUM OPINION*

JOHNSTONE, Senior District Judge.

This matter is before the Court on the motion of Petitioner Gentry pursuant to Fed.R.Civ.P. 59(e) to alter or amend the Memorandum Opinion and Judgment en-tered by the Court on March 18, 2004. The Court entered a Memorandum Opinion on that date holding that Gentry's right to confrontation had been violated, contrary to *Maryland v. Craig,* 497 U.S. 836, 848–50, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), by the admission at trial of expert witness testimony by two-way closed circuit television. The Court determined that even though the prosecution failed to establish a compelling state policy to justify the use of the closed circuit system, Gentry was not prejudiced by the improper admission of the expert testimony because the testimony would not have been different had the State's witnesses appeared personally in McCracken Circuit Court to testify to her blood alcohol level, clothing fiber identification, DNA identification or occupant roles in the vehicle on the evening of the fatal traffic accident that killed Brian Pettit. Accordingly, the Court did not disturb Gentry's state court conviction for second-degree manslaughter and driving under the influence.

Gentry now asks the Court to re-examine its harmless error analysis under *Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). While she agrees that the *Brecht* standard is the appropriate one in the context of a habeas corpus challenge, Gentry maintains that the Court improperly applied this standard by speculating on the nature of the prosecution experts' testimony had they elected to appear and face direct cross-examination. In Gentry's view, the correct approach is not to speculate on what would have been the in-court expert testimony, but to ask instead whether the remaining prosecution testimony, without the improperly admitted expert testimony, would have been sufficient, of itself, to support the verdict of the jury. Gentry insists that this approach is required by *Brumley v. Wingard,* 269 F.3d 629, 644–47

(6th Cir.2001) and *Stoner v. Sowders,* 997 F.2d 209, 213–14 (6th Cir.1993), two decisions that are now discussed at length in his motion to alter or amend.[1]

■ After carefully examining *Brumley* and *Stoner,* the Court is forced to agree that its prior harmless error analysis was inadequate. A brief review of the *Brumley* decision highlights the analytical error of the undersigned. In *Brumley,* an Ohio prisoner was convicted of complicity to commit aggravated murder. At trial, the prosecution was permitted to enter into evidence the videotape disposition of a key fact-witness, Tony Kirklin, who saw the events leading up to the shooting of the victim, Becky Knapp. After Brumley's conviction and life sentence were affirmed in the Ohio appellate courts, a federal district court granted Brumley habeas corpus relief concluding that Brumley's confrontation rights had been violated by the admission of Kirklin's videotape testimony without the necessary showing that he was sufficiently unavailable. *Brumley,* 269 F.3d at 635. In its decision, the district court concluded that the admission of the videotape was not harmless error because without Kirklin's testimony, a reasonable jury could not have convicted Brumley of conspiracy to commit aggravated murder. *Id.* at 636.

The State of Ohio asked the district court to reconsider its ruling and appealed from the denial of that request. Before the Sixth Circuit, the State argued on appeal that the *Brecht* standard required the court to consider whether the presentation of the evidence on videotape, instead of as live testimony, had a substantial impact. *Brumley,* 269 F.3d at 645. The State argued that Brumley could not demonstrate

any injurious effect from the presentation of the video as opposed to live testimony.

The Sixth Circuit bluntly rejected this argument by the State. To quote the Court:

This specious argument is undermined by both this court's harmless-error jurisprudence as well as by its own logic. In terms of logic, the State's position is that the admission into evidence of the videotaped deposition testimony of constitutionally available witnesses will always be harmless error—at least in cases where defense counsel has cross-examined the deponent—because the defendant/petitioner will **never** be able to show that he was harmed by the admission of the constitutionally infirm evidence. The State's position completely ignores the importance of live, in-court testimony recognized by the Supreme Court since at least 1895 in *Mattox.* See *Mattox,* 156 U.S. at 242–43, 15 S.Ct. 337.

In terms of this court's harmless-error jurisprudence, the proper standard by which to gauge the injurious impact of the admission of constitutionally infirm evidence is to consider the evidence before the jury **absent the constitutionally infirm evidence.** See *Gilliam,* 179 F.3d at 995 (holding admission of taped confession of witness invoking Fifth Amendment privilege to be harmless error on the basis of the other evidence admitted at trial); *Stoner v. Sowders,* 997 F.2d 209, 213 (6th Cir.1993) (rejecting argument that the admission of the videotaped testimony of available key witnesses was harmless error by examining the rest of the trial record).

*Brumley,* 269 F.3d at 645–46 (emphasis added).

1. While the *Brumley* decision was cited to in Gentry's original objections to the report and recommendation of the magistrate judge, the *Stoner* decision was cited for the first time in the motion to alter, amend or vacate.

As can be plainly seen, the Sixth Circuit rejected the very type of analysis that the undersigned used when attempting to apply the *Brecht* harmless error standard. The question is not whether direct confrontation would have produced different testimony from the five expert witnesses that the prosecution was unable to persuade to travel to Paducah, Kentucky, to testify at trial. Instead, the question more properly is whether the remaining evidence, other than the improperly admitted expert witness testimony, is sufficient to support the jury verdict returned in Gentry's case. If not, then the admission of the video conference testimony had a "substantial and injurious effect" on determining the jury's verdict, and habeas corpus relief will be warranted.

█ It is immediately clear to the undersigned that the remaining proof offered by the Commonwealth, absent its expert witness testimony, was entirely insufficient to support the jury's verdict of second-degree manslaughter, K.R.S. 507.040, and operating a motor vehicle while under the influence of alcohol, K.R.S. 189A.010. The only testimony offered at trial concerning the level of alcohol in Gentry's blood was expert witness testimony from serologist, Phil Wilson. Otherwise, no fact-witness testified that Gentry appeared to be alcohol-impaired or drinking in excess on the night of the offense. Likewise, the only testimony that attempted to conclusively establish that Gentry was the driver of the vehicle was the expert witness testimony of Dr. William Smock, a physician specializing in automobile collision occupant roles, and that of Tracey Phillips, a trace analyst. Without the testimony of the State's five expert witnesses, its case lacked sufficient evidence to support either conviction, the second-degree manslaughter or the DUI conviction.

The Commonwealth does not challenge this conclusion in its response to Gentry's motion. In fact, the Commonwealth does not mention the *Brumley* or *Stoner* decisions, much less dispute Gentry's interpretation of them. In this respect, Gentry's arguments go unopposed. Instead, the Commonwealth merely argues in general terms that habeas corpus relief is limited to only extraordinary cases that involve the denial of fundamental fairness. The Court does not disagree with this principle as a general statement, but the undersigned must conclude that it would be both extraordinary and fundamentally unfair for the Court to ignore the binding precedent of *Brumley* in order to cling to an unsupportable misapplication of *Brecht's* harmless error analysis. The Court is not only obligated, but more than willing, to acknowledge its own errors and do so with this opinion.

Accordingly, the Court determines that Petitioner Gentry is entitled to a conditional writ of habeas corpus should the Commonwealth not retry her within ninety (90) days of the entry of the accompanying amended judgment or within ninety (90) days of any final opinion on appeal that affirms this revisited decision should an appeal be taken. The motion of the Respondent for summary judgment shall be denied by entry of an amended judgment that will conditionally grant Gentry's motion for habeas corpus relief. The conclusion of the Court regarding the availability of a certificate of appealability to the non-prevailing party, pursuant to 28 U.S.C. § 2253(c), remains unchanged from the original Memorandum Opinion.

### *JUDGMENT*

Pursuant to a separate Memorandum Opinion having been entered this date:

**IT IS ORDERED AND ADJUDGED** that:

1) The judgment dated March 17, 2004 and entered in this action on March 18, 2004 is **VACATED,** and the motion of the respondent for summary judgment is now **DENIED;**

2) The motion of the petitioner for a writ of habeas corpus be, and it is, hereby **CONDITIONALLY GRANTED** if the Commonwealth does not retry Gentry within ninety (90) days of any final opinion on appeal that affirms this revisited decision should an appeal be taken by the respondent.

This is a final judgment, and there is no just cause for delay.