**Ronnie Lee ANDERSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–SC–000205–MR.

Supreme Court of Kentucky.

Aug. 25, 2011.

Rehearing Denied Nov. 23, 2011.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Susan Roncarti Lenz, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

A Mason Circuit Court jury convicted Ronnie Lee Anderson of assault in the first degree and found him to be a persistent felony offender in the second degree. Anderson received twenty years imprisonment and appeals to this Court as a matter of right, claiming the trial court committed reversible error by denying his motion for a directed verdict; by failing to suppress statements made during an interview with the police; and by instructing the jury to determine his Persistent Felony Offender (PFO) status before determining the sentence for his assault conviction. For the

reasons set forth herein, we reverse Anderson's conviction and remand for further proceedings consistent with this Opinion.

## RELEVANT FACTS

On July 26, 2009, Anderson, Andy Ormes and others gathered at a friend's house for a barbecue. Anderson and Ormes got into a fight over Anderson's girlfriend and Anderson cut Ormes's face, along the jawbone, with a straight razor. Ormes later testified at trial, "The knife hit my jawbone. They said if my jawbone didn't stop it, that I wouldn't be here today." According to Ormes, the resulting gash was over an inch deep and bleeding when he was taken by ambulance to the hospital. Joellen Jackson, the charge nurse on duty in the emergency room that day, testified without explanation that she considered Ormes's injury "serious," however, Jackson did not directly treat Ormes and was only peripherally involved in his case.[1] Jackson further explained the hospital assigned incoming patients a triage level from one to five, with level one assigned to those "fixin' to die" and level five to those who need to refill a prescription. Another nurse evaluated Ormes and assigned his triage level that day, but Jackson, without consulting Ormes's chart, guessed at trial that Ormes was probably a level two or three. Ormes also had an "excessively high" heart rate, which the treating physician attributed to adrenaline and treated with IV medication. Ormes's carotid artery was not lacerated and the damage was repaired with sutures.[2]

Ormes was sent home the same day. Ormes claimed he was off work for "a while" after the incident and has sharp pains near the scar "every once in a while." Notably, no medical records from the emergency room admission were introduced at trial and there was no proof Ormes received any additional medical treatment for the injury.

On the night of the incident, police officers took Anderson to the police station for questioning. While waiting in an interrogation room, Anderson had a conversation on his cell phone in which he made several incriminating statements. Shortly thereafter, the investigating officer entered the room, read Anderson his *Miranda* rights for the first time, obtained Anderson's signature waiving his *Miranda* rights, and began the interview. Anderson made a motion to suppress his statements to the police as involuntary due to his intoxication. After a hearing on the matter, the trial court entered an order denying the motion, finding that, "although having alcohol on his breath, [Anderson] was clearly not so intoxicated as to make his statements involuntary or untrustworthy." The court pointed out Anderson indicated he understood his *Miranda* rights, "made coherent statements, had good coordination, answered questions, made appropriate responses and statements, and was otherwise in control of himself."

The jury convicted Anderson of assault in the first degree and found him to be a persistent felony offender in the second

1. Nurse Jackson started Ormes's IV, prepared the suture kit and spoke with the nurse and doctor on Ormes's case. The doctor was apparently on duty in Afghanistan at the time of trial but there was no explanation as to the absence of testimony by the treating nurse.

2. We refer to the absence of damage to Ormes's carotid artery because the Commonwealth, at trial and in its brief to this Court, refers to Ormes's injury as a neck injury. In fact, the trial evidence, especially photographs of Ormes in the emergency room, clearly reflects a cut on his jawbone, with no injury to his neck.

degree.[3] Adopting the jury's recommendation, the trial court sentenced Anderson to twenty years imprisonment. On a matter of right appeal to this Court, Ky. Const. § 110(2)(b), Anderson claims the trial court erred by denying his motion for a directed verdict, by denying his motion to suppress, and by instructing the jury to determine his PFO status before determining his sentence for assault. We find there was insufficient evidence to convict Anderson of assault in the first degree and accordingly reverse his conviction on that charge and remand for further proceedings.

### ANALYSIS

**I. The Commonwealth's Proof Did Not Support a Conviction For Assault in the First Degree.**

■■■ Anderson claims there was insufficient proof of a "serious physical injury" to convict him of assault in the first degree. This issue was not properly preserved so our review proceeds pursuant to Kentucky Rule of Criminal Procedure (RCr) 10.26, under which relief may be granted for a palpable error that affects a party's substantial rights and results in a manifest injustice.[4] In a criminal case, the Constitution of the United States mandates the government must prove every element of the charged offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Miller v. Commonwealth,* 77 S.W.3d 566, 576 (Ky.2002). *See also* KRS 500.070(1). Failure to do so violate the accused's right to Due Process. *In re Winship,* 397 U.S. at 364, 90 S.Ct. 1068.

■■■ To convict Anderson of assault in the first degree, the Commonwealth had to prove Anderson intentionally caused serious physical injury to Ormes by means of a deadly weapon or a dangerous instrument; or, under circumstances manifesting extreme indifference to the value of human life, Anderson wantonly engaged in conduct which created a grave risk of death to Ormes and thereby caused Ormes serious physical injury. KRS 508.010. Under either option, Anderson must have caused a "serious physical injury," which is statutorily defined as a "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(15). This statute sets a "fairly strict level of proof which must be met by sufficient evidence of injury." *Prince v. Commonwealth,* 576 S.W.2d 244, 246 (Ky. App.1979). While medical proof is not necessary, *Brooks v. Commonwealth,* 114 S.W.3d 818 (Ky.2003), it certainly can assist in establishing the seriousness of the injury. When determining whether a defendant caused a "serious physical injury," the issue is not whether there was proof of an act that *could* cause "serious physical injury." The issue is whether there was proof of an act that *did,* in fact, cause "serious physical injury." *Commonwealth v. Hocker,* 865 S.W.2d 323 (Ky.1993) (Leibson, J., dissenting). After careful review

---

3. The jury was also instructed on assault in the second degree and assault in the fourth degree but never reached these lesser included offenses, having found Anderson guilty of assault in the first degree.

4. Anderson moved for a directed verdict at the close of the Commonwealth's case and after all the evidence was presented but stated no specific grounds. *Pate v. Commonwealth,* 134 S.W.3d 593, 597 (Ky.2004) (CR 50.01 requires that the movant state specific grounds for the directed verdict; a general motion forecloses ordinary appellate review of a specific ground not presented to the trial court, leaving only palpable error review.)

of the record, we find there was insufficient proof that Anderson caused a "serious physical injury" as defined by the statute.

The only proof presented as to Ormes's injury was that Anderson cut the side of Ormes's face, on the jaw line, with a straight razor, inflicting a laceration that was one inch deep and bleeding. At the hospital, Ormes was given IV medication for his elevated heart rate, which the physician attributed to adrenaline, his laceration was sutured and he was sent home. After the incident, Ormes claimed he was off work for "a while" and has sharp pains in his neck "every once in a while." There was no proof of any subsequent medical treatment attributable to the injury.

In cases where the Court has found serious physical injury, it has required a more exacting level of proof than the evidence presented in this case. In *Brooks v. Commonwealth*, 114 S.W.3d 818 (Ky.2003), the Court held the victim, whose neck had been cut with a knife, had suffered a serious physical injury. However, unlike the present case, in *Brooks* there was evidence of a "substantial risk of death" where the victim had two long crossing slashes on his neck, stab wounds on the right side of his face and neck, and multiple defensive wounds on both upper extremities. *Id.* at 824. When emergency technicians reached the victim, a large amount of blood was pooled in his lap and he required close observation after treatment. *Id.* Similarly, in *Commonwealth v. Hocker*, 865 S.W.2d 323 (Ky.1993), the Court found a "substantial risk of death" where the victim sustained a skull fracture, hemorrhaging, and blood clots, which required at least two days of continuous observation and monitoring in the intensive care unit (ICU), followed by six additional days of

hospitalization. The Court in *Parson v. Commonwealth*, 144 S.W.3d 775 (Ky.2004), considered for the first time what constitutes a "prolonged impairment of health" for purposes of KRS 500.080(15). In *Parson*, the Court determined substantial, prolonged pain constitutes a "prolonged impairment of health" and found "serious physical injury" under this prong where the victim suffered from headaches, neck pain, lack of range of motion caused by muscle spasms, upper back pain, and numbness in her right arm for five months after a car accident, and continued to have neck pain, for which she was required to take medication regularly, at the time of the trial. *Id.*

Here, unlike the numerous slashes, cuts, and severe blood loss in *Brooks*, 114 S.W.3d 818, there was only evidence of a cut on Ormes's jaw and no proof as to the severity of any blood loss. Unlike the critical skull fracture, hemorrhaging and blood clots, which required continuous supervision in the ICU and over a week in the hospital in *Hocker*, 865 S.W.2d 323, here the laceration on Ormes's jaw was repaired with sutures and he was sent home the same day; there was no proof as to any additional treatment. Unlike the multiple incidents of prolonged pain, lost range of motion and arm numbness, which required long-term medication in *Parson*, 144 S.W.3d 775, here there was only testimony by Ormes that he was off work for "a while" and has sharp pains in the area of the injury "every once in a while." While the scar on Ormes's jaw does constitute a disfigurement,[5] it is not of sufficient severity to support a finding of "serious physical injury" under the second prong of KRS 500.080(15), which requires not merely disfigurement, but "serious and prolonged" disfigurement.

---

**5.** Black's Law Dictionary defines "disfigurement" as "an impairment or injury to the appearance of a person or thing." *Black's Law Dictionary* (9th ed.2009).

Slashing at someone's face and neck area with a straight razor certainly could cause "serious physical injury." However, the question is not what *could* have happened, but rather what *did* happen. The Commonwealth failed to present proof that Ormes did in fact sustain a "serious physical injury," a necessary element for first-degree assault. To convict Anderson when there is a failure of proof on an element of the crime is a violation of Due Process and thus a manifest injustice pursuant to RCr 10.26. Accordingly, Anderson's conviction for first-degree assault must be reversed.

## II. The Trial Court Correctly Denied Anderson's Motion to Suppress Where There Was No Violation of His Miranda Rights.

■ We address Anderson's argument concerning the trial court's failure to suppress the statements he made to police as it may recur upon any retrial on the lesser included assault charges.[6] Anderson argues the trial court erred when it overruled his motion to suppress statements made to the police, which he contends were involuntary due to his intoxication. We disagree. Appellate review of a trial court order on a suppression motion involves a two-step analysis. *Commonwealth v. Whitmore*, 92 S.W.3d 76 (Ky. 2002). First, the factual findings of the trial court are conclusive if supported by substantial evidence. *Id.;* RCr 9.78. Second, if the findings are supported by substantial evidence, the appellate court conducts a de novo review to determine whether the trial court's ruling is correct as a matter of law. *Whitmore*, 92 S.W.3d at 79.

■ An otherwise voluntary statement will not be excluded on the basis of intoxication unless the accused is "intoxicated to the degree of mania, or of being unable to understand the meaning of his statements ... Loss of inhibitions and muscular coordination, impaired judgment, and subsequent amnesia do not necessarily (if at all) indicate that an intoxicated person did not know what he was saying when he said it." *Britt v. Commonwealth*, 512 S.W.2d 496 (Ky.1974). Put another way, the basic question is whether the accused was in "sufficient possession of his faculties to give a reliable statement." *Id.*

■ Having reviewed the record, we cannot say Anderson was so intoxicated as to reach the point of mania or give an unreliable statement. After the pretrial suppression hearing, the trial court found Anderson, "although having alcohol on his breath, was clearly not so intoxicated as to make his statements involuntary or untrustworthy." Anderson was sober enough to respond appropriately to the officer's questions with facts and details about the day's events, such as the specific street where he left his eyeglasses. He was able to sit upright in his chair, had good coordination, could walk without difficulty and was otherwise in control of himself. He was able to recognize and converse with another officer he knew from a prior occasion. Officer Walton, the investigating officer who interviewed Anderson, testified at the suppression hearing that, based on his experience as a police officer, Anderson was not intoxicated to the point of being unable to make voluntary and trustworthy statements. Further, as the trial court noted, Anderson indicated he understood his *Miranda* rights and signed the waiver form. We hold the trial court's

6. *See, McGinnis v. Wine,* 959 S.W.2d 437 (Ky. 1998) (double jeopardy does not preclude retrial on lesser included offenses).

ruling was based on substantial evidence and Anderson was "in sufficient possession of his faculties to give a reliable statement." *Britt*, 512 S.W.2d at 500. Accordingly, Anderson's statements were voluntarily made and properly admitted.

 It is not clear from Anderson's brief whether he is also arguing that the statements he made on his cell phone before the interview commenced, which were captured on videotape, were inadmissible because he had not yet been *Mirandized*. Out of an abundance of caution, we address this issue and hold the statements were properly admitted. *Miranda* warnings are necessary only where a person in custody is subjected to interrogation., *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Interrogation may be express questioning or "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301, 100 S.Ct. 1682. When Anderson made the inculpatory statements he was sitting in an interrogation room, voluntarily talking with someone on his cell phone. A police officer was stationed in the corner of the room but he was not speaking to or interacting with Anderson. Anderson was clearly not subject to any express questioning or coercive tactics. Simply being in custody is not sufficient to trigger the safeguards of *Miranda*. *Smith v. Commonwealth*, 312 S.W.3d 353 (Ky.2010). As to these statements Anderson made in a phone call, we conclude that because he was not interrogated, there was no violation of his *Miranda* rights and his statements were admissible.

### CONCLUSION

We reverse Anderson's conviction of assault in the first degree due to insufficient evidence of a "serious physical injury," a necessary element of the crime. While Anderson may have been intoxicated during his interview with the police, he was not intoxicated to the point of mania. The trial court properly admitted his statements as reliable and voluntarily made. The statements Anderson made on his cell phone prior to interrogation were also voluntary, were not elicited by police, and were admitted in accord with the dictates of *Miranda*. For the foregoing reasons, we reverse the judgment of the Mason Circuit Court and remand for further proceedings consistent with this Opinion.[7]

All sitting. All concur.

---

7. We need not address at length Anderson's third argument, concerning the improper penalty phase instructions. However, the trial court did err by requiring the jury to determine Anderson's PFO status before determining his sentence for the assault conviction and, thus, we are compelled to reiterate our directive for trial courts to follow the procedure prescribed in *Commonwealth v. Reneer*, 734 S.W.2d 794 (Ky.1987). *See also Owens v. Commonwealth*, 329 S.W.3d 307 (Ky.2011).