# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 16, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0449-MR

ROY GLOVER                                                  APPELLANT

V.                   ON APPEAL FROM PULASKI CIRCUIT COURT
HONORABLE JEFFREY T. BURDETTE, JUDGE
NO. 18-CR-00702-001

COMMONWEALTH OF KENTUCKY                           APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Driving a stolen vehicle, Roy Glover led police on a chase which resulted in his arrest and a Pulaski County grand jury indicting him on various charges including attempted murder. At trial, instead of attempted murder, a Pulaski County jury found Glover guilty of first-degree assault (intentional). Glover argues on appeal that the trial court erred by (1) instructing the jury on first-degree assault as a lesser-included offense of attempted murder; (2) not instructing the jury on the defense of voluntary intoxication; (3) not instructing the jury on fourth-degree assault; (4) not granting a directed verdict on the receiving stolen property charge; (5) admitting into evidence a jail-call video; and (6) allowing a detective to narrate the video. Upon review, we affirm the Pulaski Circuit Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Around noon on September 25, 2018, Roy Glover and Michael Wilson went for a ride in a stolen vehicle. Glover was driving. Science Hill Police Officer Martin fell in behind the vehicle and activated his lights. Rather than stopping, Glover accelerated. Officer Martin pursued him reaching speeds of 80 to 90 miles per hour. Other officers joined the pursuit and made efforts to stop Glover.

Pulaski County Lieutenant Williams placed spike sticks across U.S. Highway 27. Glover drove onto the shoulder to avoid them. Shortly after that, Glover steered the vehicle into oncoming traffic, traveling northbound in the southbound lane, and in particular, forced one motorist off the road to avoid being struck head-on. After Glover left U.S. Highway 27 and turned onto a dead-end long driveway, Trooper Baxter and Lieutenant Williams parked their vehicles at the driveway entrance. When Glover circled back toward the entrance, Lieutenant Williams began laying down spike sticks between the two cruisers. Glover accelerated towards the gap. Lieutenant Williams attempted to jump over the car but was knocked several feet into the air, rolled over the windshield, and landed on his back. Trooper Baxter fired at Glover but instead struck the passenger, Wilson, in the neck. The chase continued. Glover eventually left the car and was found hiding in a soybean field.

Glover was arrested, indicted on multiple charges including attempted murder of Lieutenant Williams, two counts of wanton endangerment (one count for endangering an officer and one count for endangering a motorist), first-

2

degree fleeing and evading (motor vehicle),[1] receiving stolen property over $500, and being a persistent felony offender in the second degree. A Pulaski County jury found Glover guilty of all charges, except for attempted murder, opting instead to find Glover guilty of first-degree assault (intentional). The jury recommended a total sentence of seventy-five years in prison, and the trial court sentenced Glover to seventy years in prison, the statutory maximum allowed. As noted above, Glover brings six issues on appeal.

## ANALYSIS

### I. The Trial Court Did Not Err by Instructing the Jury on First-Degree Assault.

The jury was instructed it could find Glover guilty under count one of the indictment of either attempted murder; first-degree assault, intentional or wanton; second-degree assault, intentional or wanton; or first-degree wanton endangerment. The trial court overruled Glover's objection to the first-degree assault instruction.

Glover argues that the first-degree assault instruction as a lesser-included offense of attempted murder was erroneous for two primary reasons: first, lack of notice through either the indictment[2] or discovery that the Commonwealth would seek a first-degree assault instruction, a crime with elements differing from attempted murder, and second, insufficiency of the trial proof to establish the "serious physical injury" element of first-degree assault.

---

[1] The second-degree fleeing and evading (on foot) charge was dismissed.

[2] The indictment alleged that Glover committed the offense of attempted murder by "attempting to cause the death of Deputy Jon Williams."

3

Glover particularly argued before the trial court that he did not have notice that the Commonwealth would seek a first-degree assault instruction when (1) discovery only contained a report of a brief hospital visit which indicated no broken bones, negative results from CT scans and x-rays, and negative results from a blood test; (2) the evidence the Commonwealth presented at trial to prove serious physical injury—Lieutenant Williams' arthritis testimony—was not supported by hard medical evidence; and (3) Lieutenant Williams refused a pretrial interview. Before this Court Glover argues expressly that the indictment charging that he "committed the offense of Criminal Attempt to Commit Murder, by attempting to cause the death of [Lieutenant] Williams" also did not provide notice that he would be defending against a first-degree assault as a lesser-included offense, an offense which requires proof of intent to harm and that the defendant caused serious physical injury. Glover cites dicta in *Holland v. Commonwealth*, 114 S.W.3d 792, 801 n.6 (Ky. 2003), to urge this Court, like the defendant in *Hall v. Commonwealth*, 337 S.W.3d 595 (Ky. 2011), to apply the *Blockburger v. United States*, 284 U.S. 299 (1932), double jeopardy lesser-included-offense analysis to his case. He asserts that doing so would bring consistency across the double jeopardy and lesser-included offense doctrines to the determination that first-degree assault is not a lesser-included offense of attempted murder.

The Double Jeopardy Clauses of Section 13 of the Kentucky Constitution and the Fifth Amendment to the United States Constitution prohibit not only multiple prosecutions for the same offense but also protect against multiple

4

punishments for the same offense at one trial. *Jordan v. Commonwealth*, 703

S.W.2d 870, 872 (Ky. 1985). *Blockburger* sets forth the test for determining

whether the same course of conduct may result in multiple convictions,

commonly referred to as the same-elements test.[3] *Blockburger* states "the test

to be applied to determine whether there are two offenses or only one, is

whether each provision requires proof of a fact which the other does not." 284

---

[3] In *Blockburger*, the defendant was charged with violating provisions of the Harrison Narcotic Act. 284 U.S at 300.

> Section 1 of the Narcotic Act creates the offense of selling any of the forbidden drugs except in or from the original stamped package; and section 2 creates the offense of selling any of such drugs not in pursuance of a written order of the person to whom the drug is sold. Thus, upon the face of the statute, two distinct offenses are created. Here there was but one sale, and the question is whether, both sections being violated by the same act, the accused committed two offenses or only one.

*Id.* at 303–04.

> Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Gavieres v. United States*, 220 U.S. 338, 342, 31 S. Ct. 421, 55 L. Ed. 489, and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in *Morey v. Commonwealth*, 108 Mass. 433: 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' Compare *Albrecht v. United States*, 273 U.S. 1, 11, 12, 47 S. Ct. 250, 71 L. Ed. 505, and cases there cited. Applying the test, we must conclude that here, although both sections were violated by the one sale, two offenses were committed.

*Id.* at 304.

U.S at 304. Applying this rule when dealing with greater and lesser offenses, *Brown v. Ohio*, 432 U.S. 161, 168 (1977), accordingly held that when the lesser offense requires no proof beyond that which is required for conviction of the greater offense, the greater and lesser offenses are the same for double jeopardy purposes. We have likewise stated that "[a] defendant is put in double jeopardy when he is convicted of two crimes with identical elements, or where one is simply a lesser-included offense of the other. In such a case, the defendant has only actually committed one crime and can only endure one conviction." *Turner v. Commonwealth*, 345 S.W.3d 844, 847 (Ky. 2011).

Kentucky Revised Statutes (KRS) 505.020(1)(a) and KRS 505.020(2), described as codifying *Blockburger*, *see, e.g.*, *Kiper v. Commonwealth*, 399 S.W.3d 736, 742, 746 (Ky. 2012), state:

> When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when . . . [o]ne offense is included in the other, as defined in [KRS 505.020(2)].

KRS 505.020(1)(a).

> A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:
>
> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or
>
> (c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

6

(d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.

KRS 505.020(2).

KRS 505.020(2) has a dual purpose. "The first is to provide a definition of the phrase 'included offense' for the purpose of limiting the permissibility of multiple convictions under [KRS 505.020(1)]. The second is to provide for the circumstances under which conviction of an offense not expressly named in the charging instrument is appropriate." KRS 505.020 Kentucky Crime Commission/LRC Commentary (1974). KRS 505.020(2)(a) "serves to 'include' within one offense any other offense (felony, misdemeanor or violation) which may be established by the same, or less than all, [ultimate] facts required for proof of the first." *Id* "In other words, 'if the proof necessary to establish the greater offense will of necessity establish every element of the lesser offense,' the latter is an included offense." *Id.* Thus, KRS 505.020(2)(a) allows a jury to acquit a defendant of a charged offense and instead convict him of a less serious crime that is necessarily committed during the commission of the charged offense.

*Perry v. Commonwealth*, 839 S.W.2d 268 (Ky. 1992), and *Hall*, 337 S.W.3d at 595, are cases which applied KRS 505.020(2)(a) and concluded that the facts of the case supported the trial court allowing the jury to consider first-degree assault as a lesser-included offense of attempted murder. Glover contends that his case is unlike *Perry* and *Hall* and that the Court should compare the statutory elements of the two crimes and ultimately determine

7

that first-degree assault is not a lesser-included offense of attempted murder. Glover believes that not only should this Court not follow *Perry* and *Hall*, but it should go further and overrule those cases.

In *Perry*, this Court stated that "[f]irst-degree assault can be an included offense of attempted murder if the missing element which prevents the murder from being consummated is not a necessary element of first-degree assault." 839 S.W.2d at 273. We provided the following example:

> [A]ssume the defendant shot the victim with a pistol resulting in serious physical injury but not death. If the jury believes that the defendant intended to kill the victim, he can be convicted of attempted murder. If on the other hand, they believe that he did not intend death but only intended to injure the victim, he could be convicted of first-degree assault. . . . There can be no argument that once a defendant has caused "serious physical injury" to a victim, that he has not satisfied the "substantial step" element of attempted murder. The Commonwealth is then required to prove that the intent of the defendant was to kill the victim and not just to cause "serious physical injury."

*Id.* With Perry's mental state being the only element which separated a conviction for attempted murder from first-degree assault, the *Perry* Court concluded the circumstances warranted an instruction on first-degree assault as an alternative verdict to attempted murder. *Id.*

When the issue of whether first-degree assault could be considered as a lesser-included offense of attempted murder was presented in *Hall*, the defendant argued that *Perry* was no longer good law in light of comments in *Holland*. 337 S.W.3d at 604. In *Holland*, while the jury was given a first-degree assault instruction as a lesser-included offense of attempted murder, the instruction was not challenged. *Holland*, however, noted that the Court

8

returned to the statutory element approach for determining lesser-included

offenses for purposes of double jeopardy in *Commonwealth v. Burge*, 947

S.W.2d 805 (Ky. 1996), an approach viewed as different than that used in

*Perry*'s lesser-included offense analysis under KRS 505.020(2). *Holland* noted,

citing *Perry*:

> We observe, however, that in holding that KRS Chapter 508
> Assault offenses can be lesser-included offenses of Attempted
> Murder, this Court explicitly rejected "a strict statutory 'elements'
> approach . . . that looks to the elements of the main and lesser
> crimes as set out by the applicable statutes, rather than . . . the
> charge or the evidence." *Perry v. Commonwealth, supra* at 271.
> But just five years after *Perry*, in *Commonwealth v. Burge*, Ky., 947
> S.W.2d 805, 809–11 (1996) this Court re-examined its double
> jeopardy jurisprudence, which is the alter-ego (or "flip-side") of our
> lesser-included offense law, and returned to the "same element"
> analysis found in *Blockburger v. United States*, 284 U.S. 299,
> 52 S. Ct. 180, 76 L. Ed. 306 (1932). We have not had an
> opportunity since *Burge* to reconsider whether an Assault offense
> can be a lesser-included offense to Attempted Murder. In other
> jurisdictions, which have substantially similar penal statutes,
> courts have applied *Blockburger*'s "same element" analysis and
> have held that assault offenses are not proper lesser-included
> offenses in attempted homicide prosecutions. *See State v. Gisege*,
> 561 N.W.2d 152, 155–156 (Minn. 1997); *People v. Maldonado*, 123
> A.D.2d 788, 507 N.Y.S.2d 415, 417 (N.Y. App. Div. 1986). And,
> although we have not reached the question as squarely, we would
> observe that, in *Commonwealth v. Hager*, Ky., 41 S.W.3d 828
> (2001), this Court noted the distinction between KRS Chapter 507
> Homicide offenses, which require a person's death, and KRS
> Chapter 508 offenses, which require physical injury, and held that
> the trial court's jury instructions erroneously presented Fourth–
> Degree Assault as a lesser-included offense in a Murder
> prosecution. *Id.* at 831.

114 S.W.3d 792, 801 n.6.

*Hall* recognized as dictum *Holland*'s suggestion that "perhaps *Perry*

ought to be re-examined in light of our embracing a 'same elements' test for

9

determining whether an offense is a lesser-included offense for double jeopardy purposes in *Commonwealth v. Burge*." 337 S.W.3d at 606. While recognizing that arguments exist "that a *Blockburger*-type strict statutory elements approach should govern questions of which offenses a trial court may properly instruct the jury on as lesser-included offenses of charged offenses," the *Hall* Court found no reason to disturb *Perry*'s holding that first-degree assault can be a lesser-included offense of attempted murder depending upon the facts of a particular case. *Id.* at 607-08. The *Hall* Court declined to adopt a strict statutory elements approach, especially in light of Hall's failure clearly to advocate such an approach until after the trial was over. *Id.* at 606-07.

Like the defendant in *Hall*, Glover cites *Holland*, 114 S.W.3d 792, 801 n.6, as reason this Court should use the statutory element approach here, emphasizing the inconsistency of the lesser-included offense and double jeopardy jurisprudence within Kentucky and with other states with similarly-structured penal statutes. Glover further contends that the reasons the Court would not consider the statutory element approach in *Perry* and *Hall* are not present in his case. He argues that, in contrast to *Hall*, his objections to the first-degree assault instruction preserved the question of whether the Court should apply the statutory element approach for determining lesser-included offenses. Glover also believes his case is distinguished from *Perry* and *Hall* because he argued to the trial court that the proof did not support a "serious physical injury" finding, making his case one in which the first-degree assault

10

instruction would be erroneous because more than his mental state separated his conviction for attempted murder and first-degree assault.

"Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, . . . the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (internal citations omitted). KRS 505.020 declares the General Assembly's intent regarding multiple punishments, and as noted above, is understood to incorporate the *Blockburger* test, and to the extent that the statute expands upon or otherwise clearly departs from *Blockburger*, the General Assembly's intent controls. *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 40 (Ky. 2011). As discussed in *Perry* and *Hall*, and as reflected in its plain language, KRS 505.020(2) provides four circumstances in which a jury instruction on a lesser-included offense is proper.

Because the legislature has not directed that the same-elements approach must be used to determine whether a defendant may be convicted of an uncharged crime, like in *Hall*, Glover's argument that this Court's double-jeopardy cases recognize first-degree assault as a separate offense from, and therefore not a lesser-included offense of, attempted murder when conducting the *Blockburger* same-element test, *see, e.g., Kiper*, 399 S.W.3d at 742–43, is not persuasive. As *Perry* and *Hall* recognize, the Kentucky General Assembly did not limit the trial court to the "statutory elements" approach. Clearly, under KRS 505.020(2)(a), the trial court may use a fact-based approach to

11

determine whether a lesser-included offense instruction is appropriate. Even if Glover's objections to the first-degree assault jury instruction were viewed as preserving the argument for application of the statutory element approach, we find no basis for overruling *Perry* or *Hall* here. Furthermore, in regard to Glover's notice argument, KRS 505.020(2) and particularly this Court's interpretation of it in *Perry* and *Hall* provides notice to defendants that first-degree assault, although not named in an indictment charging attempted murder, may be the subject of a jury instruction at trial. Here, the question whether the trial court erred by giving the first-degree assault instruction comes down to whether the trial court abused its discretion when finding that evidence was sufficient to prove Lieutenant Williams suffered a "serious physical injury."

An instruction is properly given when the evidence would permit a reasonable juror to make the finding the instruction authorizes. *See Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015) (citation omitted). Because "[a] decision to give or to decline to give a particular jury instruction inherently requires complete familiarity with the factual and evidentiary subtleties of the case that are best understood by the judge overseeing the trial from the bench in the courtroom," we review a claim that the trial court erred by giving an instruction that was not supported by the evidence for an abuse of discretion. *Id.*

A person may be found guilty of assault in the first degree under one of two scenarios, one involving intentional conduct and the other involving

12

wanton conduct,[4] but both scenarios have in common the causation of serious physical injury. KRS 508.010. Here, Glover was found guilty of intentional first-degree assault. KRS 508.010(a). Specifically, KRS 508.010(a) provides that a person is guilty of first-degree assault when he "intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument." "Serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." KRS 500.080(17).[5] In this case, the question is whether Lieutenant Williams suffered a prolonged impairment of health from his physical injury.

Lieutenant Williams testified at trial about his injuries. He explained that while he suffered pain from his injuries that day adrenaline had allowed him to rejoin the chase and he was driven to the hospital after the scene was cleared. The jury saw photos of bruising and injuries to his legs and lower back. Lieutenant Williams also testified that he developed a hematoma on his lower back after being struck by the vehicle. He was forced to miss six weeks

---

[4] KRS 508.010(b) states: "Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person."

[5] As of April 8, 2022, the definition for serious physical injury was recodified under KRS 500.080(17). 2022 Ky. Acts ch. 151, § 1. Prior to that, and at the time of Glover's criminal actions considered in this case, it was codified under KRS 500.080(15). *See id.* Because the recodification does not impact the analysis, we reference now effective KRS 500.080(17).

of work because putting on his gun belt caused intolerable pain. Lieutenant Williams also testified that he continues to suffer from arthritis in his back, which causes pain whenever it rains. He explained that he did not have back pain or arthritis before being struck by the vehicle seventeen months earlier.

*Parson v. Commonwealth*, 144 S.W.3d 775 (Ky. 2004), established that prolonged pain may be a "prolonged impairment of health" constituting a "serious physical injury." *Id.* at 787. In *Parson*, the Court determined substantial, prolonged pain—the victim suffered from headaches, neck pain, lack of range of motion caused by muscle spasms, upper back pain, and numbness in her right arm for five months after a car accident, and continued to have neck pain, for which she was required to take medication regularly, at the time of the trial—constituted a "prolonged impairment of health" and found "serious physical injury." *Id.* While the trial court in this case concluded that Lieutenant Williams' testimony regarding his arthritic pain supported a finding of "serious physical injury," Glover argues that the facts of his case are more comparable to *Anderson v. Commonwealth*, 352 S.W.3d 577 (Ky. 2011), which resulted in this Court reversing Anderson's conviction of assault in the first degree due to insufficient evidence of a "serious physical injury." *Id.* at 584.

In *Anderson*, this Court found the proof insufficient to show that the victim's bleeding, a one-inch deep razor cut to his jaw line, was a serious physical injury. At the hospital, the victim's elevated heart rate, attributed to adrenaline, was treated with IV medication, his cut was sutured, and he was sent home. *Id.* at 582. Afterward the victim was off work for a while and

14

occasionally had sharp neck pains. *Id.* There was no proof of any subsequent medical treatment related to the laceration. *Id.* Glover argues that although Lieutenant Williams testified seventeen months after being struck by the car that his injury is "still painful today," his testimony that his hematoma hurt for "a little while" and that arthritic pain comes on rainy days shows that he did not suffer prolonged pain.

The Commonwealth views *Anderson* as clarifying that pain suffered infrequently or only "every once in a while" is insufficient to establish prolonged pain. The Commonwealth, however, points out that like the victim in *Parson* who continued to suffer pain nineteen months after a car crash, even beyond the six weeks of pain he suffered from the hematoma, Lieutenant Williams continued to suffer pain seventeen months after being struck by the car. The Commonwealth argues that it produced ample evidence upon which a reasonable jury could find that Glover's assault caused Lieutenant Williams to suffer prolonged pain, and hence, prolonged impairment of health.

We agree with the Commonwealth. While Glover complains that medical evidence was not part of the Commonwealth's proof, enduring arthritic pain is a widely known, common occurrence from accidents. It was the province of the jury to weigh the officer's credibility and certainly a reasonable juror could make the finding authorized by a first-degree assault instruction. We conclude the trial court did not abuse its discretion by instructing the jury on first-degree assault.

15

## II. The Trial Court Did Not Err by Denying a Voluntary Intoxication Instruction.

Glover's next claim in regard to the jury instructions is that the trial court committed error when it refused to give an instruction for voluntary intoxication. Under Glover's theory of the case, his methamphetamine use did not allow him to form the specific intent required to be found guilty of attempted murder—the intent to kill, KRS 507.020(1)(a); intentional first-degree assault—the intent to cause serious physical injury, KRS 508.010(1)(a); or intentional second-degree assault—the intent to either cause serious physical injury or to cause physical injury by means of a deadly weapon or dangerous instrument, KRS 508.020(1)(a).

The jury heard testimony from Detective Moore and Glover regarding Glover's intoxication. Glover testified that he took methamphetamine the night before, or the morning of, the police chase. However, he conceded that he knew he was supposed to stop for the police, knew he was putting people in danger, but fled because he did not want to go to prison, but doubted he would have made the same decision sober. During his post-arrest interview, Glover told Detective Moore that he was not intoxicated. Detective Moore testified that he was experienced with people under the influence of methamphetamine and saw no sign Glover was high during the interrogation.

A voluntary intoxication instruction is appropriate when the evidence is reasonably sufficient to prove the defendant was so intoxicated that he did not know what he was doing. *Luna v. Commonwealth*, 460 S.W.3d 851, 882 (Ky.

16

2015) (citation omitted). While Glover testified to use of methamphetamine prior to driving, neither that testimony, his demeanor during the interrogation, nor other evidence supported the requested instruction. Consequently, we find the trial court did not abuse its discretion by denying a voluntary intoxication instruction.

### III. The Trial Court Did Not Err by Denying a Fourth-Degree Assault Instruction.

Glover's last jury instruction claim is that the trial court erred by denying a fourth-degree assault instruction as a lesser-included offense of attempted murder. A person is guilty of fourth-degree assault when "he intentionally or wantonly causes physical injury to another person" or "with recklessness causes physical injury to another person by means of a deadly weapon or a dangerous instrument." KRS 508.030(1). Glover contrasts the elements of the assault crimes to argue that the jury could have reasonably doubted that he was guilty of first- or second-degree assault but found him guilty of fourth-degree assault. With the proof being that Glover hit Lieutenant Williams with a car, which is undisputed to be a dangerous instrument, Glover focuses his argument on the possibility that the jury could have found that he acted with recklessness, as opposed to wantonly. In regard to the mental states, a person acts recklessly "when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists." KRS 501.020(4).[6] A

---

[6] KRS 501.020(4) states:

A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he fails to

17

person acts wantonly "when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." KRS 501.020.[7]

As Glover notes, citing *Taylor v. Commonwealth*, 995 S.W.2d 355, 362 (Ky. 1999), a fourth-degree assault instruction is unwarranted if there is no evidence which would support a finding that he acted recklessly. While Glover views his testimony that he did not see Lieutenant Williams as supporting a jury's finding that he was acting recklessly, that testimony must be considered against Glover's testimony that he "definitely" knew he was putting people in danger when he decided to flee from the police in a vehicle and avoid prison by "any means necessary." Because the fourth-degree assault instruction is only required if the jury could have reasonably doubted that he did not act wantonly, the evidence Glover points to does not support the fourth-degree assault instruction. The trial court did not abuse its discretion by denying Glover's request for the instruction.

---

perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

[7] KRS 501.020(3) states:

A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

18

**IV. The Trial Court Did Not Err by Denying a Directed Verdict on the Receiving Stolen Property Charge.**

Glover was driving a stolen vehicle, a 1996 Toyota Camry, during the chase and was charged with receiving stolen property of a value of at least $500. Glover's fourth claim on appeal is that the trial court should have granted a directed verdict on the charge given the state of the stolen vehicle.

The jury saw photos of the Camry. The owner of the vehicle testified that the vehicle's dents existed before it was stolen; the driver's side window was not operational; the driver's side door was missing its interior panel; the paint job was original; and the odometer reading was between 438,000 and 468,000 miles. The owner also testified that the car would have sold for $1000 because it had a working motor and was still capable of reaching 110 miles per hour. As to the owner's experience with vehicles, he had purchased six or seven vehicles in his lifetime.

Glover complains that no reasonable juror could conclude that a dented 23-year-old car with at least 438,000 miles on it was worth more than $500. He asserts that the owner's testimony of what the car would have sold for is misleading and citing *Commonwealth v. Reed*, 57 S.W.3d 269, 270 (Ky. 2001), that the Commonwealth was required to establish the market value of the car at the time of the theft. While an owner's testimony of the value of the stolen property is competent evidence, *id.* at 270 (citing *Poteet v. Commonwealth*, 556 S.W.2d 893, 896 (Ky. 1977)), Glover cites *Beasley v. Commonwealth*, 339 S.W.2d 179, 181 (Ky. 1960), for the premise that for things such as

19

automobiles which have market values established by recognized objective resources, such as the National Automobile Dealers Association (NADA) manual, those resources should be the evidence used to provide the value of the stolen property in order to provide consistency within the law. *Beasley*, discussing the valuation of stolen property in a grand larceny case (now included within KRS 514.030 Theft by Unlawful Taking), states:

> The true criterion is the fair market value of the property at the time and place it was stolen, if there be such a standard market; if not, the value must be arrived at from the facts and circumstances and the uses and purposes which the article was intended to serve.

*Id.* (citations omitted).

While Glover may have preferred a certain industry resource to have been used to establish the value of the stolen vehicle, that is not the state of the law in Kentucky. Even before *Poteet*, our predecessor Court's civil decisions long expressed the rule that an ordinary witness who testifies that he knows the market value of an automobile is competent to express his view of such value and is not required to be an expert or have special qualifications for that purpose. *See Carpenter v. Haydon*, 447 S.W.2d 351, 352 (Ky. 1969); *Williams v. Kirtley*, 263 S.W.2d 119, 121 (Ky. 1953) (citing *Louisville & N.R. Co. v. Hill*, 212 S.W.2d 320 (Ky. 1948), and *General Exch. Ins. Corp. v. Branham*, 178 S.W.2d 409 (Ky. 1944)). As such, the Commonwealth produced sufficient evidence for the jury to be instructed on the offense of receiving stolen property with a value at least $500. "When presented with a motion for a directed verdict, a court must consider the evidence as a whole, presume the

Commonwealth's proof is true, draw all reasonable inferences in favor of the Commonwealth, and leave questions of weight and credibility to the jury." *Acosta v. Commonwealth*, 391 S.W.3d 809, 816 (Ky. 2013) (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187–88 (Ky. 1991)).  A trial court should deny a directed verdict when the "Commonwealth has produced . . . more than a scintilla [of evidence] and it would be reasonable for the jury to return a verdict of guilty based on it."  *Id.*  "On appellate review, the standard is slightly more deferential; the trial court should be reversed only if 'it would be *clearly unreasonable* for a jury to find guilt.'"  *Id.*  We conclude the trial court did not err by denying the requested directed verdict.

### V. Even if the Trial Court Erred by Admitting into Evidence a Jail-Call Video, It Was Harmless Beyond a Reasonable Doubt.

Prior to trial, Glover filed a motion in limine to exclude a video recording of a jail phone call, also referred to here as a Telemate call.  Glover was not a call participant.  Instead, the video showed Glover walking around in orange jail attire, flexing his bicep muscles, and saying to the female call participant, "Got them cop killing muscles, girl!"  Glover moved to exclude the video on the basis it might make Glover seem dangerous.  The trial court overruled Glover's motion, finding Glover's statement relevant to proving Glover's attempt to kill and its probative value not substantially outweighed by the danger of undue prejudice.  Although the Commonwealth recommended the trial court provide an admonishment, the trial court concluded that doing so was unnecessary since the jury would already know Glover had been arrested at the end of the

21

chase.  At trial, the approximately two-minute video was played, showing its date stamp of October 16, 2018, and therefore reflecting that it was recorded three weeks after Glover's arrest.  Glover argues on appeal that the admission of the jail-call video without an admonishment deprived him of his right to a fair trial.  A trial court's decision to admit evidence is reviewed for an abuse of discretion.  *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007).

Glover primarily relies on *Deal v. Commonwealth*, 607 S.W.3d 652 (Ky. 2020), decided after Glover's trial, to argue that the jury seeing him in jail clothes deprived him of the right to a fair trial.  In *Deal*, the Commonwealth made both audio and video recordings of the 35-minute interview when Deal was questioned by an Assistant Commonwealth Attorney and a homicide detective.  *Id.* at 656.  The video showed Deal wearing handcuffs and an orange inmate jumpsuit.  *Id.*  The video date stamp showed that the interview at the jail occurred two months after Deal's arrest.  *Id.* at 668.  The trial court denied Deal's motion to exclude the video without addressing why the audio recording would not suffice.  *Id.* at 656.  The trial court agreed with the Commonwealth that because Deal was charged with murder, no one would be surprised that he was in jail.  *Id.*

This Court explained that admitting video evidence depicting a defendant in jail custody is not inherently prejudicial in all circumstances, *id.* at 663, but that videos of the defendant "bearing badges of custody," such as wearing shackles and inmate garb, "pose a threat to the defendant's right to a fair trial because it tends to suggest to the jury that some official determination has

22

already been made that the defendant needs to be restrained and separated from society," *id.* at 667. To determine whether a video is inherently prejudicial, the trial court must engage in a thorough analysis of factors relevant in the specific case, such as the likelihood that it could be interpreted by the jury as indicating that the defendant has already been adjudged to be particularly dangerous or culpable. *Id.* at 663. If the trial court finds that the video is "inherently prejudicial," or prejudicial based on the circumstances of a particular case, its next step is to consider if the video is justified by some identifiable, essential state interest. *Id.* at 664. If so, the trial court may exercise its discretion to allow its admission. *Id.* In *Deal*, the Court concluded that Deal was entitled to reversal of his conviction of second-degree manslaughter by complicity; the Court explained that "the video was prejudicial based on specific circumstances of Deal's case, the trial court abused its discretion in admitting the video without engaging in the required analysis, and the Commonwealth failed to prove beyond a reasonable doubt that this error did not influence the jury's verdict." *Id.* at 667.

Glover contends that because the trial court did not address any of the factors listed in *Deal* and denied the Commonwealth's request for an admonition, there is no way to know how Glover's appearance in the jail video affected the verdict and therefore his convictions should be reversed. The Commonwealth, on the other hand, describes the trial court explaining its basis for admitting the Telemate video, leading to the conclusion under *Deal* that the video was properly admitted. The Commonwealth, comprehensively

23

addressing *Deal*'s analysis, asserts that the video was not inherently prejudicial, that the video served an essential state interest, and the jury's decision to acquit Glover of attempted murder proves beyond a reasonable doubt that Glover was not prejudiced by the video.

Beginning with the question whether the video could be interpreted by the jury as indicating the Glover had already been adjudged to be particularly dangerous or culpable, the Commonwealth characterizes the video as making clear that Glover was considered sufficiently low risk that he did not need to be shackled and had some freedom to mingle and socialize with other inmates. The video's time stamp showed that Glover was in jail three weeks after his arrest, in contrast to Deal's, which showed he was in jail two months afterward. Additionally, being about two minutes in length, the video's length reduced its potential for unfair prejudice. The Commonwealth also points out that in contrast to *Deal*, where the police officers recorded their interrogation of Deal while he was in jail, Glover is on the video boasting about his "cop killing muscles" on his own volition during a personal jail phone call between a fellow inmate and someone Glover apparently knew.

Assessing the essential state interest the video served, the Commonwealth makes the point that Glover does not deny that his boast was relevant to the main dispute at trial—whether he struck Lieutenant Williams with the intent to kill or accidentally. Furthermore, Glover does not argue that this evidence could have been introduced in an alternative manner, the video providing the necessary context to go with his boast. The Commonwealth

24

views the trial court's decision not to give an admonition as the only factor that weighs in Glover's favor, but contends that since video evidence of a defendant in custody is not inherently prejudicial in all circumstances, the admission of a two-minute video of an unshackled Glover mingling with other jail inmates while wearing an orange jail uniform cannot be considered a significant threat to his constitutional right to a fair trial.

Lastly, the Commonwealth argues that even if the video was erroneously admitted, the circumstances show beyond a reasonable doubt that playing the video was harmless. That is, the video was only relevant to proving Glover possessed the requisite intent for attempted murder and the jury acquitted him of that charge, instead finding him guilty of first-degree assault. Moreover, Glover fails to explain how the video would have unduly influenced the jury to find that he caused Lieutenant Williams to suffer serious physical injury—the only disputed issue for first-degree assault. Upon review, we agree with the Commonwealth, even if the trial court erred by admitting the Telemate video, playing the video was harmless beyond a reasonable doubt.

### VI. The Trial Court Did Not Commit Palpable Error by Allowing Detective Moore's Testimony about the Jail-Call Video.

Prior to playing the Telemate video for the jury, the Commonwealth asked Detective Moore what Glover said on the video. Without objection, Detective Moore replied: "Mr. Glover comes behind the other inmate, and he flexes his arm, kinda showing his muscle, and says 'got them cop killing muscles, girl!'" Viewing this as prejudicial, Glover seeks palpable error review of Detective Moore's interpretation of the Telemate video.

25

Under Kentucky Rule of Criminal Procedure (RCr)10.26, if an unpreserved error is found to be palpable and if it affects the substantial rights of the defendant, the appellate court may grant appropriate relief if manifest injustice has resulted from the error. An error is palpable when it is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). The error must be "so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

Generally, the testimony of a lay witness is limited to matters or facts about which he has personal knowledge. *See* Kentucky Rule of Evidence (KRE) 602; KRE 701; *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 287 (Ky. 2014); *Martin v. Commonwealth*, 13 S.W.3d 232, 235 (Ky. 1999). Citing *Morgan v. Commonwealth*, 421 S.W.3d 388, 392 (Ky. 2014), Glover argues that Detective Moore, not a party to the conversation, "interpreted" the video and usurped the function of the jury as the ultimate finder of fact by interpreting the video. Detective Moore's testimony, however, was not interpretive in the sense that his testimony was responsive to the Commonwealth's questions. *Cuzick v. Commonwealth*, 276 S.W.3d 260, 266 (Ky. 2009). Furthermore, "narrative testimony is not necessarily interpretive testimony." *Id.* To the extent Detective Moore testified about events he was not personally familiar with, he did not testify to anything that was not captured in the video recording itself, which the jurors could watch and interpret independently. *Boyd v. Commonwealth*, 439 S.W.3d 126, 132 (Ky. 2014). If any error occurred, it was

26

not palpable and so fundamental that it threatened the integrity of the judicial process.  *Brewer*, 206 S.W.3d at 349; *Martin*, 207 S.W.3d at 5.

## CONCLUSION

For the foregoing reasons, the Pulaski Circuit Court's judgment is affirmed.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Jared Travis Bewley
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Robert Baldridge
Assistant Attorney General